RE P U B L I C A N BANNER OFFICERS (UNITED STATES v.). See Case No. 16,-148.

REPUBLIC FIRE INS. CO. (CARDWELL v.). See Case No. 2,396.

REPUBLIC FIRE INS. CO. (LEITER v.). See Case No. 8,227.

## Case No. 11,704.
### In re REPUBLIC INS. CO.
[3 Biss. 452.] [1]

District Court, N. D. Illinois.    Feb., 1873.

INSURANCE COMPANY — UNPAID STOCK — CALL BY COURT—RETIRED STOCK—UNEARNED PREMIUMS —EQUALIZATION OF PAYMENTS—BANKRUPTCY.

1. This court has jurisdiction and power to make a call and assessment against the stockholders in a bankrupt insurance company, on stock held by them, but not paid up. It has all the powers of a court of equity in the premises.

2. The company, while solvent, having bought and retired a portion of its capital stock, this court will not go behind such action of the constituted authorities of the company. Such an act was within their general scope and power, and does not relieve the other stockholders from their liability to calls after the company has been declared bankrupt.

[Cited in First Nat. Bank of Salem v. Salem Capital Flour Mills Co., 39 Fed. 96.]

3. Although the charter of the company gives no right to make a call on the unpaid stock, except in case "of losses exceeding the means of the corporation," this clause should not be construed as limiting the right of the company or court to an assessment for payment of losses only. When the funds are exhausted by losses an assessment may be made, either to pay debts already contracted or to create a new fund for a business basis. The losses exceeding the means of the company, the liability of the stockholder on his unpaid stock becomes fixed, and whether the balance is to be applied in payment of losses or in payment of other liabilities and expenses does not affect the question.

4. This court also has power to make an assessment to return unearned premiums, and all claims properly provable against the company, and also the expense of closing up its affairs

5. The court also has jurisdiction of the equalization of payments between stockholders; and where part have paid more than their fair proportion, it can assess the others and adjust the account between them.

6. It can also, where equity requires it, allow interest on claims proven.

In bankruptcy. This was an application by Joseph R. Payson, the assignee of the Republic Insurance Company of Chicago, bankrupt, for an order of court directing an assessment upon the stockholders of said company, for such a per-centage of the unpaid capital yet standing subject to call as should, in the judgment of the court, be necessary to liquidate the known liabilities of the bankrupt. The petition was filed on the 20th day of December, 1872, and an order then entered that all stockholders should show cause on or before the 20th day of January, 1873, why the assessment asked for should not be made, and that a copy of such order should be forwarded by mail to the address of each stockholder, as shown by the books of said company, and also that said order should be published in certain designated newspapers. On the return day of this rule an extension thereof was given to the 28th day of January, and on the day last named several stockholders having appeared by counsel and objected, for various reasons

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

assigned, to the making of such assessment, and denied the facts set forth in the petition, a reference was made by the court to H. N. Hibbard, Esq., the register in bankruptcy of this court, to take proof upon the following matters of fact raised by said petition and answers: First—The total amount of liabilities of the company. Second—The amount of available assets, exclusive of the unpaid capital stock. Third—The amount of unpaid capital stock. The register having returned into court the proof taken by him in pursuance of this order, the matter was set down for hearing, and argument had upon the various questions raised by the petition, answers, and proof.

Tenneys, Flower & Abercrombie, for assignee.

McCagg, Fuller & Culver, Paddock & Ide, and other counsel, for stockholders.

BLODGETT, District Judge. The substantial facts in the case appear to be that said bankrupt insurance company was a duly organized corporation, by virtue of a special act of incorporation passed by the legislature of Illinois, approved February 18, 1865, and an act amendatory thereof, approved March 25, 1869; that the capital stock of said bankrupt was limited only by the discretion of its board of directors; that said board fixed said capital stock first at $1,000,000, and subsequently increased the same to $5,000,000, and subsequently to $7,500,000, but at no time in the history of the company did its subscribed capital stock amount to quite $5,000,000; that the capital stock of said company is divided into shares of $100 each, and that a large portion of its stockholders reside outside of this state and district; that by the terms of subscription, made in accordance with the charter, twenty per cent. of said capital stock was to be paid when the subscription was made, and the remaining eighty per cent. was to be assessed only in the event of the twenty per cent. cash fund becoming impaired by losses.

The charter also provides that "the real and personal property of each individual stockholder shall be held liable for any and all losses and liabilities of the company, to the amount of the stock subscribed or held by him and not actually paid in. In all cases of losses exceeding the means of the corporation each stockholder shall be liable to the amount of the unpaid stock held by him." And the same provision is substantially incorporated into each stock certificate issued by said company.

By the fire in the city of Chicago on the memorable 9th of October, 1871, said company sustained losses upon fire policies it had issued to the amount of about $3,250,000, and the cash fund available for the payment of said losses amounted to only $955,000. At that time the capital stock of said bankrupt then outstanding was $4,773,400, on which

twenty per cent. had been paid and eighty per cent. remained unpaid and subject to call, in pursuance to the charter and subscription contract I have quoted.

On the 3d of November, 1871, the executive committee of said company made an assessment and call of eighty per centum upon their stock, which action of the committee was ratified and approved by the directors of said company, at their regular annual meeting held on the 17th of January, 1872, but with the proviso that in case any stockholder should pay forty per cent. of such call by the 15th of March then next, the balance should not be enforced until the further action of the executive committee; and on the 17th day of July, 1872, the executive committee made an absolute and unconditional call and assessment of sixty per cent. on each stockholder, to be paid by the first day of August, 1872. In pursuance of this action of the executive committee and board of directors many of the stockholders have paid various sums upon their stock, some having paid the full eighty per cent. remaining unpaid at the time the first call was made; and the funds thus raised, together with those on hand at the time of the fire have been applied to the payment of the losses and expenses of the company, with the exception of about $50,000 now on hand; and there are still unpaid losses to the amount of $786,338.62, and other liabilities to the amount of $250,000 or upwards. It also appears from the proof that after the losses aforesaid the company suspended all business except such as pertained to the winding up of its affairs; that it adjusted the losses sustained, and paid twenty-five per cent. in cash soon after such adjustment, and gave certificates of indebtedness for the balance, payable one-third the first day of April, one-third the first day of August, and one-third the first day of December, 1872. It also appears that at some time soon after the great fire, and while the policy of the company as to the liquidation of its liabilities was yet unsettled, a portion of its creditors accepted a payment of twenty-five per cent. on the amount of their claims for losses, and gave releases in full; but when the company afterwards resolved to assess its stockholders and pay in full, these releases were surrendered and those creditors received certificates to the full amount of their adjusted losses less the twenty-five per cent. paid; that some of its stockholders also held policies on which they sustained losses, and that their claims for losses were applied directly to the payment of the call on their stock. And it further appears that, by a resolution of the executive committee, stockholders were allowed to pay their calls in certificates of indebtedness issued by the company on its losses, thereby wholly retiring the certificates so paid in. Many of the stockholders, it also appears, are married women, infants, insolvents, and persons who have gone out

of the country, so that their subscriptions are unavailable, it being reliably estimated that at least fifteen per cent. of the unpaid stock is in that condition. There are also still outstanding policies issued by the company which it will cost at least $50,000 to cancel by payment of the unearned premiums, and it is urged by the assignee that the payments made by the stockholders should be equalized, so that those who have paid more than their pro rata required to pay the debts of the bankrupt and expenses of administration, should have the excess refunded to them. The assignee also suggests that the certificates of indebtedness, although not bearing interest upon their face, yet, by operation of law, draw interest after maturity till the adjudication of bankruptcy, and that provision should be made for this item, at least, if not for interest until payment is made.

In view of the facts thus shown, the assignee asks that a call and assessment of sixty dollars be made on each share of the capital stock of said bankrupt company, upon which call shall be credited to each stockholder such payments as he has made on his stock, in excess of the original twenty per cent. paid at the time of subscription.

The objections urged in behalf of the stockholders, who have appeared to show cause against the rule, may be summarized as follows: First—This court has no jurisdiction to make the call and assessment asked. Second—Some of said stockholders insist that said company has fraudulently retired a portion of its capital stock, without the consent of all the other stockholders, and they are thereby relieved; and others contend that the company, since they subscribed for their stock, has increased the amount of its capital stock and otherwise changed its business and financial policy, whereby they are discharged. Third—That the assessment called for is unnecessarily large to meet the liabilities of the bankrupt; that assessment can only be made to pay losses, and no assessment can be made to pay unearned premiums for the purpose of canceling policies, or to pay the expenses of administration and closing the affairs of the estate; that the court has no power to adjust equities between stockholders, and cannot, therefore, apply assessments to reimburse those who have paid more than their pro rata, such being the peculiar province of a court of equity, and that the court should not assess to pay interest.

As to the first objection, it will be sufficient to say that this court is, by the bankrupt law [of 1867; 14 Stat. 517], clothed with all the powers of a court of equity, and the power of a court of equity to call in the unpaid stock of an insolvent corporation for the purpose of paying its debts has been so frequently asserted and exercised in late years, as to leave the question of its power in that regard no longer in doubt. Ogilvie

v. Knox County Ins. Co., 22 How. [63 U. S.] 381; Winans v. McKean Railroad & Navigation Co. [Case No. 17,862].

As to the second point—that the company has fraudulently retired a portion of its stock, to the prejudice of its stockholders—it is based mainly upon these facts, as shown in the proof: Some time in the latter part of the year 1870, the directors of the company concluded to withdraw its business agencies from the city of New York, and perhaps some other points in the Eastern states, and extend its business correspondingly in the West and Northwest, and in order to prevent dissatisfaction among stockholders in the places from which the business of the company was so withdrawn, it was deemed best to purchase the stock held there, if it could be done at not over twenty per cent., with the intention of reissuing said stock in the new localities where agencies or branches were established; and in pursuance of this resolution about $217,000 of stock was so purchased in at from fifteen to seventeen cents on the dollar, and at the annual meeting in January, 1871, $200,000 of this stock, not having been reissued, was, for the purpose of showing no reduction of outstanding capital during the year, placed in the name of the treasurer of the company upon the books, but with the express understanding that he held it in trust for the company, who had the right to cancel it, if deemed expedient to do so by the board. This they subsequently did, thereby reducing the outstanding stock on the books to the amount actually held by the stockholders.

To my mind it seems a sufficient answer to this objection, that all this action took place while the company was in a solvent condition, and that this court will not, in this proceeding, go behind the action of the constituted authorities of the company while in full control of its affairs, and attempt to rectify any errors of judgment or even frauds then perpetrated. The board of directors or officers of the company may have exceeded the powers in many particulars, which it is too late now to inquire into. It is evident that this stock, while it stood in the name of the treasurer in trust for the company, was not understood between the parties to the transaction—that is, the board and the treasurer—as assessable stock. He only held it, nominally, for the company, and any attempt to assess that stock now, would lead to costly litigation and delay. There was nothing upon the books of the company, at the time this court took jurisdiction of it, to show there is any present liability on this stock.

But it is not necessary that the court should now pass upon the validity of the stock thus placed in the name of its officer and afterwards retired or cancelled. It is sufficient to say for the present, that it does not appear to be now available for the purpose of raising funds to meet the debts of the bankrupt. In some future proceeding it may become

necessary to go more thoroughly into an examination of the question raised by this proof. The principle is fully settled by the authorities, that no fraud or misconduct by the managers of a corporation can be set up by stockholders to defeat their liability to creditors on unpaid stock. Ogilvie v. Knox County Ins. Co., 22 How. [63 U. S.] 381.

The third objection questions the extent of the assessment asked and the power of the court to make an assessment, except for losses. But I am clearly of the opinion that the proof shows a necessity for an assessment to the full amount asked by the petition. The losses yet unpaid, for which certificates have been issued, amount to nearly $800,000, and there are still outstanding policies on which losses may yet be sustained. At the time of the great fire of October, 1871, the company had nearly $1,000,000 in available funds which it had the right to apply to the payment of any debt or claim against the company. This fund has been exhausted by applying it to the payment of losses, and although the right to make a call and assessment on the unpaid eighty per cent. does not arise, under the charter, except in case of "losses exceeding the means of the corporation," yet I do not construe that clause as limiting the right of the company or court to make an assessment for the payment of losses only; when the funds are exhausted by losses, and an assessment becomes necessary, it may be made for all purposes, either to pay debts already contracted, or to create a new fund for the purpose of a business basis. In this case the losses far exceeded the means of the company, and the liability of the stockholder for the amount of the unpaid stock held by him is fixed. The contingency has happened which the charter provided should make him liable on his unpaid stock; and whether it is to be applied in payment of losses, or a part in payment of other liabilities and expenses of the company, does not affect the question.

I cannot indorse the limited and narrow construction attempted to be put upon the liability of these stockholders. True, an assessment does not seem to have been contemplated until the funds were exhausted by losses, but that does not, either in spirit or in letter, restrict the company or court to the payment of losses only, out of the funds called in by assessments on the unpaid stock.

In regard to the payment of the unearned premiums to cancel policies yet unexpired. The company is still liable on those policies, and every dictate of caution and sound business prudence requires that liability to be terminated, which can only be done by return of the unearned premiums, and I have no doubt of the power of the court to assess for that purpose. The same may be said of the expenses of closing the affairs of the company. This is incident to the administration of the law, and the item is undoubtedly one to be provided for out of the unpaid stock.

As to the equalization of payments between stockholders, this court has jurisdiction of the entire matter. Not only the corporation, but its entire constituency is before the court, and full justice can be done not only to creditors but between stockholders. And if, as the proof shows in this case, part of those stockholders have paid more than their fair proportion, the others who have not paid can be compelled to pay enough to adjust the account between stockholders. This court, having all the powers of a court of equity in the premises, can compel each stockholder to pay what in equity and good conscience he ought to pay, and distribute the proceeds of such payment among those entitled to receive it, whether creditors or stockholders, who have paid more than their ratable share. It is urged that the stockholders who have paid in full have released the company from all claim for contribution, and this appears to be true, as the proof now stands, as to a part of this class of stockholders; but others of this class have not waived their right to contribution, and this is not the time to pass upon the force and effect of such waiver or release. The individual stockholder who has given such release has a right to be heard before a decision is made against him on this point. As to the item estimated for interest, some interest has accrued, and I understand it to be in the power and discretion of the court to allow interest on claims proven, under circumstances where equity requires it. But even if the amount estimated for this item is not all required for that purpose, there is still a large contingent liability for losses on policies yet in force, and for expenses of collecting the assessment now asked, which convinces me that the funds to be realized from the assessment proposed will not, by any probability, be in excess of the demand upon it, and that to save the expense and delay of another assessment, this should be made ample to meet all probable requirements.

It is not my purpose to decide, on this occasion, who are stockholders, nor the amount for which they may be respectively liable, as those questions will more regularly come up in suits at law brought by the assignee to enforce payment of the assessment. But what I do intend to decide and determine is, that the court has power to make the assessment required for the payment of all claims properly provable in bankruptcy against the bankrupt, and the expenses of collecting such assessment and of the bankrupt proceedings; and also that the amount of assessment asked for by the assignee is, in my opinion, under the proof, no more than adequate to meet the debts and liabilities of the bankrupt.

An assessment of sixty per cent., as prayed for, will be ordered.

[NOTE. There were a number of actions brought by the assignee to enforce this assessment against delinquent stockholders. See Payson v. Dietz, Case No. 10,861; Same v.

Stoever. Id. 10,863: Same v. Withers, Id. 10,-864; Same v. Coffin, Id. 10,858, Id. 10,859; Same v. Hadduck, Id. 10,862. For the right of the receiver of the bankrupt corporation, the Lorillard Fire Insurance Company, which held a number of policies of reinsurance in the Republic Insurance Company, to participate in the proceeds of this last company's assets, see Id. 11,705. At a later date, certain stockholders of this company sought to have set aside the whole bankrupt proceedings. Id. 11,706.]